Morning, Your Honors, if it pleases the Court. My objective here today is to discuss with the Court the letter brief and issues that we raised therein that was submitted to the Court pursuant to its order, Your Honor's order. I believe we had two subsequent orders. One was regarding the mootness, and then the first one was regarding the constitutional issues that were raised at the first argument, and the second order was regarding the mootness issue that followed from the Supreme Court's decision in the other juvenile mail case. Correct. And we did address the mootness issue. I can discuss that if the Court needs to hear argument on those claims. I think where we are with the mootness issue is that these cases aren't moot. All of these conditions remain live and intact. Each juvenile is subject to the condition. I'd like to stress, I guess, which we set forth in the papers, that there's also the aspect to these conditions that the SORNA legislation and its constitutionality or its effectiveness is actually tied to the search condition for each one of these individuals. So, in other words, if the SORNA regulation or the order to register remains effective, then each is subject to a search and seizure provision. They're tied together. Could you clarify something for me? As I understand it, each of the three plaintiffs in this case are subject to SORNA's lifetime registration requirement? Well, I don't know that it would amount to lifetime, Your Honor, but I think it would amount to the longest time provided by Federal law for registration. Is that 25 years? I think so, Your Honor, yes. So they would be subject to the registration commitment for at least that amount of time. At least 25 years. But so in your letter, you said that the conditions would end next year for two of the individuals and then two years after that for the other. That's not 25 years, is it? No. It wouldn't be. But I think, well, now we have to talk about things that are difficult to talk about, and I guess I'll just go there. The nature of this legislation, SORNA, is it incentivizes other sovereigns, State sovereigns, tribal sovereigns, to create registries that conform to the SORNA specifics. I'm sure the Court is aware of that. So there is a question here that lurks about the independent effectiveness of SORNA on a Federal defendant, if that makes any sense. Because the Federal sovereign has no registry. There is no place that an individual such as this can go and comply with the law with the Federal sovereign. There's no infrastructure for that. Are you suggesting, counsel, then, that you don't really have a challenge to SORNA itself, but only to, for example, Montana's own sex registry? No, Your Honor. I'm not suggesting that. I'm saying that the Congress has acted, I guess to be charitable, uniquely here and said that this is SORNA and each Federal defendant will have to abide by its regulations when it's convicted of qualifying offenses, when the individual is convicted of qualifying offenses. So in some ways, it takes on a life of its own, irrespective of where you go to register. It's a circumstance that needs to be incorporated into a Federal judgment. I think that's the way I understand that. So it just acts independently of the State law. I think that's the Federal government's position. And how does that impact this case? Well, I think at some point we have to talk about this. All of these questions that have been raised pursuant to this legislation or underneath this legislation never really talk about this. This is SORNA's legislation that's too... Counsel, I guess I'm sorry. I'm missing the point here. Okay. I'm kind of missing what is it that we need to talk about, and isn't this our opportunity for talking? It is our opportunity for talking, and... Say it. What is it? Well, it's to determine whether my precise point here is whether Title 42, 16911 sub 8 is constitutional on its face. Okay. Because? Because it takes what is in the first instance a juvenile adjudication and transforms it by a legislative switch to a criminal conviction. How does it transform it to a criminal conviction? Because the legislation clearly provides that. It says the term convicted means, and then it draws in the individuals that are before the Court today and deems them... And it has no other consequences of conviction other than the sex registration requirement. Well, but that's the functional equivalent. He's deemed convicted of the conviction. Are you suggesting, then, that he has been, that his conviction has been unconstitutionally transformed into a criminal conviction? He needs to be subject to all of the protections that other criminals are given? Absolutely. So in other words, your argument is if we're going to have an equivalent sex registration requirement for juveniles as we do for adults, then the juveniles must be processed as adults. Correct. Or another way to think of it... And what principle in the Constitution commands that? That the tradition of juvenile adjudications has been that they've always been private in nature. Okay. But that we don't have a juvenile convictions clause in the Constitution. So whatever our traditions have been, it looks like Congress may have altered that tradition here. Well, I think... What constitutional principle then governs the argument that you're making? The procedural due process under Kent and under Wolf, which is cited in the letter brief that we filed, dictates that the procedure becomes the process. This is a substantive due process argument. These individuals, since the 60s, have been protected by the privacy provisions of the Constitution. Are you making a First Amendment argument? I suppose, Your Honor, that the First Amendment could be drawn into it. But it's supremely unfair to bring an individual before the court, tell him that it's going to be his proceeding is going to be private in nature and not be disclosed to the public. And then on the back end of the proceeding, tell him he has to tell the whole world. Well, the proceeding is still a valuable right because the details of what he did are not part of the sex registration process, as I understand it. But he still must declare himself convicted as such. The Court, Judge Kaczynski, and we cited that in the papers as well, indicates how similar they are. The exercise of registering and telling the general public that you've been convicted of a crime, these young individuals are told without any transfer process, without any court process whatsoever, that they must register because of their juvenile adjudication. That's what SORNA demands in this situation. They would have known that at the time they were adjudicated, wouldn't they? I'm sorry, Your Honor? They would have known that at the time that they were adjudicated. In this instance, no. There's no arraignment process. There's no record in this case that's written. Right. But SORNA was inexistent. So they should have been advised by their attorneys at that point. They knew in the sense that we are responsible for knowing the law. There's no ex post facto problem in this case like there was in Juvenile Mail 1. Your Honor, I don't know that I would saddle the attorneys with that responsibility. I would saddle the court with that responsibility. Well, wait a second. What we're asking is, Juvenile Mail 1, which was deemed moot, involved an ex post facto claim. Correct. You don't have an ex post facto claim in this case, do you? Well, the answer is probably not. Okay. And I've tried to think this out logically. The offense dates, the dates of the offenses do postdate SORNA here, the enactment of SORNA. They do. But then there's the wrinkle, if I could put it that way, of the retroactivity provision in Attorney General Gonzalez and the Val Verde problem. It would seem, however, that collectively there is no ex post facto problem here. There could be a notice problem here. There could be an ineffective assistance of counsel problem here. There could be a due process problem in that at the time of arraignment or the time that each of these individuals was at. Counsel, you have raised all of these new issues. Did you brief the ineffective assistance of counsel problem? No, Your Honor. Then let's not take time. Just tell me what the problem is. I haven't heard the argument yet. Okay. Well, the problem, Your Honor, is that 16911 sub 8 of Title 42 is unconstitutional on its face because it takes a juvenile adjudication that does not require a public trial and makes it the equivalent of an adult criminal conviction. It deems it a criminal conviction. Your argument. That's my argument. This is the new argument now, that it violates the Constitution because it's tantamount to an adult criminal conviction without all of the Sixth Amendment rights and procedural safeguards that adults are entitled to when they're having a trial. Correct. And that's clearly set forth in the letter brief that we filed. That's the core claim here. Well, it wasn't before. As I recall, the first time, I don't know if it was you or whoever. It wasn't me. Okay. The first time this was argued, the claim was that it violated the Juvenile Delinquency Act because it made public what was guaranteed to be confidential. That was the first argument. Well, and I think this is a variant of that same claim. Okay. Well, all right. Let's flesh that claim out. And I think I have fleshed the claim out. There was no transfer process here. There was no right of the juvenile to convince the Court that he should remain in his juvenile status, which is completely contrary to Kent and to Wolf. He's had no opportunity to be heard here. Again, by flip of a legislative switch, his juvenile adjudication becomes the equivalent of an adult criminal conviction. Counsel, Judge Gould, if I may ask you a question. What troubles me is the question of what provision of the Constitution says that Congress can't define the requirements of SORNA to say that a juvenile who has done a certain age has to register, which is the way I understand SORNA. So what constitutional provision really says they can't do that? Your Honor, I think the due process and equal protection clauses of both the Fifth and Fourteenth Amendment. That would be my response to that question. And, of course, one has to think about my answer in the broader sense of the case law and also the legislation, the juvenile legislation that's in existence now in most States and in the Federal venue. Under Title 18, clearly juvenile proceedings are deemed private. It's a sealed record. And each juvenile that goes into those proceedings has that understanding. And apparently now that has been upset by virtue of the enactment of SORNA. The question, though, in my mind is, okay, so SORNA seems to conflict with the policies of the Federal Juvenile Delinquent Act on confidentiality. But, you know, why isn't that Congress's call to make subject to the Constitution? Because I don't see why if the Congress wants to rearrange things and say we're going to require this kind of disclosure for juveniles of a certain age to do certain acts, why does that offend due process? Because it doesn't comport with the constitutional tradition of how juveniles have been treated. It makes juveniles just simply the equivalent in a categorical way to an adult criminal offender. If I could just go to left field here for a second, Your Honor, and I'm sure Your Honor is conversant with Smith v. Doe and how adult defendants who were previously convicted of sex offenses, the registries then came online and they complained that they were ex post facto. And the Court relied heavily on the fact that those individuals were convicted in the context of a public trial. The Supreme Court said that, that they really didn't have any kind of privacy interest. And that reasoning makes sense as it applies to adult criminal offenders. But that's not the case here. These individuals are invited into a system in this particular case, in the case before the Court, that is completely private and sealed. They make admissions. They go through some kind of pre-sentence process. The pre-sentence report is prepared. The judge looks at that for a dispositional hearing, and then a disposition is entered. It's not even termed a criminal conviction. But yet SORNA now says, well, all that process that you had previously is now the functional equivalent of a criminal conviction. And that violates due process. It violates equal protection. It violates procedural due process. There's no clear guidance here. We don't know what Congress has in mind here. Did they intend that there should be some kind of transfer process? Why, I would pose the question rhetorically, wouldn't a juvenile at 14 years of age through counsel have the right to try and convince the district court that he should remain in juvenile status and not be put on the registry? There's no opportunity for such a hearing under subpart 8 of 16911 of Title 42. So that's why. I understand that. I read your supplemental brief. I'm just wondering why putting him on the registry means he's not a juvenile. You know, in other words, why does it transmute the proceeding to be like an adult conviction? Why can't Congress just say we're going to require juvenile offenders to make the SORNA registration? Your Honor, I think my response to that specific question is that the wording of the SORNA language itself tells us that it's deemed the equivalent. The term convicted means this. It means that these certain juveniles that commit these kinds of offenses will be deemed convicted in the traditional sense. Right. Except that what – tell me what other than the requirement of registration are the consequences to the juveniles from having their adjudication deemed to be a conviction? Well, I think there's the aspect of consistent monitoring for at least 25 years, reporting every three months, sharing e-mail addresses, sharing screen names, giving DNA profiles. There's an inordinate number of intrusions into the individuals of these juveniles that essentially last at least half a lifetime. Are all of those things that you just mentioned within SORNA itself, or does that flow from the orders that were entered by the judges in the – each of the proceedings? Well, I think the answer to the question is yes and yes. It flows from SORNA itself, and it flows from the order of the court to register and comply with the requirements of SORNA. But it wouldn't require an order of the court for them to be required to comply with SORNA, would it? In this instance, it would. I mean, Your Honor, respectfully, the question is academic. The – or it's rhetorical. And judges want to know.      It's rhetorical. I mean, we've discussed this before. The consequences of the decision? The condition has been ordered in various ways in the records of each of these individuals. Right. Right. I mean, it's said like three or four times. It's connected to the search provision. It's connected to the search provision. That issue, is it self-executing? Is SORNA self-executing? The government just seems to maintain that it is. And I'm not so sure. How is it? There's no place where one can register for a Federal conviction with the Federal sovereign. Okay. And what are the consequences of the fact that the States administer the sex offender registration? Well, the consequences depends on the nature of the conviction. If it's a Federal conviction, the Federal government, in litigation up to the Supreme Court through Carr and Reynolds, takes the position that there's no interstate travel required in the context of prosecuting one. Okay. But I want to know, what are the consequences? What difference does that make for this case? Well. The fact that SORNA is not self-executing, that it depends on the States to enact a registration. Well, then I think that the district court, in each instance such as these before the Court today, should make some first-line finding of whether or not the individuals are captured by SORNA or not, whether or not it's legislation that is self-executing. All right. Does anyone have any other questions? Okay. I appreciate counsel's answers to my earlier questions. Thank you. Thank you. Counsel. Good morning, Your Honors. May it please the Court, my name is Leif Johnson for the United States. Good morning, Judge Gould. I'd like to first get right to the mootness issue, and then hopefully I can address some of these more substantive constitutional claims that have been raised. And I need to flesh out what we stated in our letter, obviously. It doesn't say a whole lot about what our mootness claim is. So let me try to do that real quickly here. Well, isn't it unlike Juvenile Mile 1, these plaintiffs are independently required to register under SORNA as of now, at least through 2012 and two of the cases in 2014. So how could this case be moved? The issue that we raised, Your Honor, was a separate issue, and that is redressability. And the question that occurred to us when we were looking at Juvenile Mile is, since we have – since we're challenging a set of conditions of release that are current through three years, up to three years, the State obviously has an independent duty or an obligation to register these juveniles as well, and they have the independent obligation to register there. So they will be providing the same information to the same registry that will be disseminated in the same way by virtue of an independent State law. And because of that, there is an issue at this court of redressability. If the juveniles are saying that the injury to them is, in fact, the disclosure of their juvenile adjudication, which it is, that is going to be disclosed anyway by independent operation of State law. And that's what you can draw from the Juvenile Mile decision and the Supreme – the Montana Supreme Court's decision answering the certified question. All three of these juvenile males would have an independent duty to register under the – How long? Excuse me? For how long? In the State? Right. Well, actually, that's a complicated question. It depends on how they're evaluated. But the – the simple answer is that during the period when these conditions are in existence for the Federal sentences, they will have that independent duty to register. All right? And so that's the product of the Juvenile Mile decision. It raises, I think, a fundamental issue under Article 3 as to whether this Court can actually redress the injury that the juveniles seek to have redressed here. And I think it's a substantial issue. Obviously, it's fairly novel. I think I would point the Court to the Lujan decision, where the Court – the Supreme Court discussed redressability at some length. And in that case, environmental plaintiffs had made a claim having to do with environmental regulations and how they applied overseas. And we haven't argued that in brief, so I'll just leave it at that, that the Court should look at that. But the fact that Montana has an independent requirement doesn't affect the fact that there is a Federal requirement for them to register for a specified amount of time. Is that correct? That's correct. So if Montana were tomorrow to say, well, we're going to – we'll leave – we'll leave SORNA compliance in effect for anything the Feds want to do with it, but we're going to eliminate our own parallel requirement that juveniles register under our State requirements, then the case still wouldn't be moved, would it? Well – There would be no independent requirement in Montana. If that occurred, you're right. But as it stands right now, there is an independent requirement. But the fact that we have sort of parallel registration requirements doesn't mean that we can't redress the question as to whether they are obligated by Federal law to register as sex offenders. Well, it may or may not, Your Honor. I mean, this issue did sort of come up in the juvenile mail decision. I mean, there Mr. Donahoe made an argument to the Supreme Court. He said, look, this isn't moot as a practical matter because I have, or my client has an independent registration obligation under SORNA itself, or he may. And the Supreme Court said, look, you can go challenge – you can go challenge SORNA later, all right? We're talking about your conditions of release as to – of this sentence. And so the Supreme Court said that doesn't have to do with the mootness of the conditions of your sentence. And I think at least an analogous argument can be made about this point, Your Honor, and that is he can go and challenge his SORNA registry requirement under State law and have it removed or modified or what have you. But that's a separate action, and that doesn't have to do with whether or not this Court can redress the problems with the sentence regarding publicity. I don't know if we have this before us, but it seems to me from reading these orders that the way they were written was that if they were required to register under SORNA, then there were all these other consequences, the search provisions and the DNA. So is it – I mean, does – do we know that whether Montana has the same extensive requirements and search requirements that go along with the registration requirement, or are these different grounds? Let me address that. That is a big red herring. In each of the juvenile sentencing proceedings, the judge basically put together two conditions of release. And I'm looking at the transcript of MMR, and I'm looking at page 18 of the excerpts of record there. And there, under Condition 13, he says, if you're required to register as a sex offender, then you have to submit to the search. That was a mistake. And the reason I say that is if you look back up in the previous page to Condition Number 4, the juvenile already has an independent registry or an independent search provision under Terms and Conditions 4. I don't – I can't really explain why that occurred. All I know is that there is always a search provision in the conditions of release. And they don't do that anymore in the District of Montana. I don't believe it was set up to be a predicate for search that he actually has a registry requirement. I just think that that was a mistake, Your Honor. And I think the – A mistake by whom? By the court and the government in basically promulgating these conditions. I don't think that in any way that registration is a predicate to the search condition. So what should we do about that mistake? I don't think it's material. He has an independent – he has an independent obligation to submit his personal residence and employment, place of employment to search anyway given reasonable cause, and that's an independent condition. So I just think it's a non-issue. Second, as to what the particular requirements of State law are, what I can tell you is that the State law in Provision 4623.504 of the Montana Code Annotated basically requires the juveniles to submit the same information that they do under Federal law. There are – obviously, the State maintains the registry. And obviously, that registry is made available to the public in the same way, whether they're directed to register under Federal law or State law. So in the sense that there is any substantive difference in the type of information that goes out to the public, I don't think there is. And so I think the Court should at least consider or not whether or not the conditions of the sentence that require registration under Federal law really do redress the harm that they're raising. Counsel, if I could interject a question, please. Yes. The mootness issue is interesting and difficult, but let's assume that we decide it's not moot. Yes. Shouldn't you – wouldn't you want to use some of your valuable time here to address the merits issues? Yes. Of the statutory conflict and the constitutional issues on which we permitted supplemental briefing? Thank you, Your Honor, and I'd like to do that. First of all, Mr. Donahoe has argued that, in essence, the statutory scheme here has converted a juvenile into essentially a criminal defendant. I would ask the Court, and I didn't cite this case to the Court for the procedural due process argument, but I'd ask the Court to look at the Doe 14 case. There, the Sixth Circuit in 2007 looked at the Michigan juvenile registry provision, and it's a very onerous registry provision, arguably more onerous than the Federal one. And in that case, the Court basically said, look, you may want to have more process about whether or not you should register. You may want a transfer here. You may want to tell the Court that you shouldn't have to register. But those are facts that are not material to the registry. The government, the Congress has stated that registry basically operates by virtue of conviction alone, and other facts that could be ascertained in further process are simply superfluous to answering that question. The larger question is, does SORNA registry in these cases actually convert a case into a criminal prosecution? It doesn't.  It's a case that we've cited in the briefs, and it's a case that we've cited in the briefs within the Sixth Amendment. If we go back to the McIver v. Pennsylvania case that we've cited in our briefs, juvenile adjudications are subject to the fundamental fairness. That's the process that is due in juvenile cases. These cases, the juveniles benefited from being adjudicated under the Federal Juvenile Delinquency Act, even though they have the additional registry requirement at the end. I mean, they still get the benefit of a number of protections against disclosure by the government and other parties. I mean, the government can't go out and publicize a conviction. We can't go out and have a press conference and say that we caught one of these criminals and he's a dangerous person. That's still forbidden under the Juvenile Delinquency Act. There are all kinds of discretionary procedures afforded to the juvenile in the Juvenile Delinquency Act that are still important procedures that help rehabilitate offenders. These juveniles were able to take advantage of those procedures. So to say that SORNA registry alone somehow converts this process, I mean, obviously, these juveniles are not subject to mandatory criminal penalties for this type of offense. I mean, they still benefit from being treated as juveniles under the Delinquency Act. Now, getting to the question of whether these two statutes can live together as this Court, I think, should find, and as we briefed in our first set of briefing, you can look at what the Congress said when it was promulgating SORNA, and we've included some of the quotes in our brief. But the House report on this is quite clear. Congress was well aware that we have a tradition in this country of treating juveniles carefully and privately. But in this instance, with regard to this subgroup of the most dangerous offenders, Congress felt that it was appropriate to protect the public. And that was a judgment and a balancing call that Congress had the discretion to make. Now, as to some of the other – I think to sum up our letter brief on the constitutional issues, I think when you really start pulling them all apart, one by one, there is good authority out there already that there are no constitutional violations here. Substantive due process. We would ask the Court to look at the Doe 14 case, but also this Court's decision in Tandeski, where the Court found that there was no fundamental right to avoid publicity in registration. We would ask the Court in the procedural due process realm to look at Doe 14 and also the Supreme Court's case of Connecticut Department of Public Safety. There the Supreme Court held that additional process for the application of a registry requirement may or may not even be relevant to the registry requirement. And if it's not relevant, then there's no need for additional process. The juveniles were protected by the process that was given them in the underlying adjudication. That rule, even though in the Supreme Court instance was applied to adults, that rule applies to juveniles as well, and the Sixth Circuit's reasoning on that in Doe 14, I think, this Court ought to follow. I think it makes good sense. SORNA registry itself does not transform the underlying adjudication. And that's really what's at issue in the procedural due process question. Moving on to equal protection, Doe 14 dealt with that. We simply don't have a suspect class here and the rational basis review. Basically, this Court has already held that there is a rational basis for this statute in the Tandeschi opinion. As to any of the other, you know, I don't think the Eighth Amendment issue is actually serious here, but if the Court has questions on it, I would try to answer them. The bottom line is, is that these statutes put side by side, there may be some impingement upon the rehabilitative purposes of the Federal Juvenile Delinquency Act in the publicity provisions of SORNA, but they can be read side to side. In fact, Congress intended them to be. And SORNA acts on the individual, on the defendant, and the Federal Juvenile Delinquency Act restricts disclosures by other parties. So there is no direct conflict between those statutes. I've set that all out in my earlier briefs on that subject, and I don't think that there's any real good argument to be made that they don't. As to one other issue that Mr. Donahoe raised, as to notice, I will just, and I don't know if the record originally contained the plea agreements, but two of these defendants did sign plea agreements that did have a notice provision about SORNA. I don't know if that was ever part of the record. And given that, Your Honors, I would cede the rest of my time, unless the Court has any particular questions about substantive issues or standing arguments. One question. When these juvenile orders expire, will the plaintiffs still be required to register under SORNA? Yeah. By operation of Federal law, they will. By operation of SORNA. Yes. And that issue was dealt with, you know, on page 2865 of the juvenile mail opinion. They're going to have this sort of independent duty under Federal law to register. But they can challenge that separately. And that doesn't sort of make the mootness issue as to redressability go away here. Okay. Well, I have a question for you, counsel, if I may. So I think I understand the argument in your briefing that there's no real conflict in the statutes in FJDA and SORNA because the former restricts what the government in court can disclose, whereas the latter asks the sex abuser to make his registration. So I understand that argument. There's no conflict. I'm not sure of the answer on that. There's at least a conflict with the policies of confidentiality, if not the literal language. So my question is, assuming we decided that the statute's conflicted, in that case, would it be permissible to say that the SORNA, the Adam Walsh Act in SORNA, effectuate an implied repeal or an appeal pro tanto of confidentiality for juveniles over 14, you know, who do a serious sex act? In other words, is there something wrong with the implied repeal argument that Congress has carved that out? Are you not making that argument in the alternative? Or do you also argue that? Our position, Your Honor, is that in order to be an implied repeal, there has to be really a direct conflict. And I just don't think there is. And I don't think the argument can be made that there is a direct conflict. I mean, Congress was well aware of this. And as the House report states, and let me just read that, So Congress was clearly aware of this conflict when it drafted the statute. Now, if Congress was drafting SORNA and it knew that it had to overturn or thus repeal portions of the FJDA, then given that knowledge, it would have done so and it would  But what Congress was clearly aware of at this time was that the two really don't conflict, that there is actually no crossover as to the actual active provisions of either statute. So Congress wouldn't be called upon in that scenario to actually announce and express intention to say that portions of the Juvenile Delinquency Act must give way here. Really what we have is Congress saying with the latter statute that we are going to restrict maybe some of the larger purposes or some of the traditions of privacy that are found not only in the Juvenile Delinquency Act, but in common law tradition. I mean, Congress gets to do that in enacting a statute like this. So I don't think that we can hold Congress responsible for failing to expressly state that it was overruling portions of the Juvenile Delinquency Act when it wasn't necessary to say that because there is no direct conflict. I guess that's the best I can say, Your Honor. I hope that helps. Okay. So that does help. I think I've got your position in mind. And thanks. Thank you, Your Honor. Thank you, counsel. All right. Thank you, counsel. And this case will be submitted and this session of the Court will be adjourned for today. All rise. Court will discuss and stand adjourned.
judges: Wardlaw, Gould, Bybee